**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

**RONALD LAVERNE JOHNS, JR.,**

**Petitioner,**

v.

**Criminal No. 2:15cr24**
**Civil No. 2:17cv584**

**UNITED STATES OF AMERICA,**

**Respondent.**

## OPINION and ORDER

This matter is before the Court on Ronald Lavern Johns, Jr.'s ("Petitioner") Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. ECF No. 57. Petitioner's § 2255 motion advances two grounds for relief, the first alleging ineffective assistance of trial counsel associated with a suppression motion, and the second alleging ineffective assistance of appellate counsel. In addition to Petitioner's § 2255 motion, the Court has before it three unopposed motions filed by Petitioner that are associated with his two § 2255 reply briefs. ECF Nos. 69, 70, 73. Petitioner's unopposed briefing motions are hereby **GRANTED**; however, even after considering the contents of his reply briefs, Petitioner's § 2255 motion is **DENIED** in its entirety.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Petitioner was charged in a four count Indictment with three drug trafficking offenses and possession of a firearm by a

convicted felon. ECF No. 13. In April of 2015, defense counsel filed a motion to suppress evidence, advancing two distinct legal challenges: (1) the search of Petitioner's car on the night of his arrest was unlawful as it was based on a traffic offense that was fabricated by police in order to stop Petitioner's vehicle; and (2) search warrant affidavits for two residences linked to Petitioner included materially false information, and/or omitted material information, thereby entitling Petitioner to a "Franks hearing" to determine whether evidence seized during the second search should be suppressed. On June 4, 2015, this Court conducted a suppression hearing at which it heard live testimony from an arresting officer, received several exhibits from defense counsel, and heard detailed argument on both the Franks hearing issue and the validity of the traffic stop. At the conclusion of the hearing, which has now been fully transcribed, the Court denied the motion to suppress. Tr. 66-70, ECF No. 53. Petitioner subsequently entered a conditional guilty plea reserving his right to appeal the denial of his suppression motion. ECF No. 32.

In September of 2015, Petitioner was sentenced to ninety months imprisonment. ECF No. 45. Petitioner filed a timely notice of appeal, and in August of 2016, the Fourth Circuit affirmed this Court's denial of Petitioner's suppression motion. ECF No. 54. In November of 2017, Petitioner filed the instant § 2255 motion and such motion was fully briefed in July of 2018. Petitioner

recently filed a supplemental reply brief, ECF No. 74, and the pending § 2255 motion is ripe for review.

## II. STANDARD OF REVIEW

A federal prisoner, in custody, may collaterally attack his sentence or conviction by moving the district court "to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). To obtain such relief, a petitioner must prove by a preponderance of the evidence that his sentence or conviction was "imposed in violation of the Constitution or laws of the United States," that the district court "was without jurisdiction to impose such sentence," that the sentence exceeds "the maximum authorized by law," or that the sentence or conviction is "otherwise subject to collateral attack." Id.; see Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958).

A § 2255 motion is, in essence, a statutory federal habeas corpus action that enables a petitioner to collaterally attack his sentence or conviction through the filing of a new proceeding, as contrasted with a direct appeal. United States v. Hadden, 475 F.3d 652, 663 (4th Cir. 2007). The existence of the right to pursue a collateral attack does not displace a direct appeal as the "usual and customary method of correcting trial errors." United States v. Allgood, 48 F. Supp. 2d 554, 558 (E.D. Va. 1999). On the contrary, with limited exceptions, a petitioner advancing new claims asserted for the first time in a § 2255 motion "must

3

clear a significantly higher hurdle than would exist on direct appeal." United States v. Frady, 456 U.S. 152, 166 (1982). Accordingly, a § 2255 collateral challenge "may not do service for an appeal." Id. at 165.

A § 2255 petitioner need not, however, overcome such "higher hurdle" to advance a freestanding claim of ineffective assistance of counsel, which is properly asserted for the first time in a § 2255 motion. See United States v. King, 119 F.3d 290, 295 (4th Cir. 1997) ("[I]t is well settled that 'a claim of ineffective assistance should be raised in a 28 U.S.C. § 2255 motion in the district court rather than on direct appeal, unless the record conclusively shows ineffective assistance.'" (quoting United States v. Williams, 977 F.2d 866, 871 (4th Cir. 1992))). To obtain relief based on an allegation of ineffective assistance, a petitioner must establish both: (1) that counsel's performance was so deficient that it fell below an objective standard of reasonableness; and (2) that counsel's inadequate performance caused the petitioner prejudice. Strickland v. Washington, 466 U.S. 668, 687-88 (1984).

Satisfying the first prong of Strickland requires a petitioner to establish that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. Reviewing courts strongly presume that counsel exercised

reasonable professional judgment, and only in "relatively rare situations" will a § 2255 motion establish that, "'in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.'" Tice v. Johnson, 647 F.3d 87, 102 (4th Cir. 2011) (quoting Strickland, 466 U.S. at 690). In reviewing counsel's performance, "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689. Furthermore, a petitioner must go beyond demonstrating that counsel's performance was below average because "effective representation is not synonymous with errorless representation." Springer v. Collins, 586 F.2d 329, 332 (4th Cir. 1978); see Strickland, 466 U.S. at 687. As explained by the Fourth Circuit, the "basic lesson" of Strickland is not just deference but high deference, and attorneys are permitted to "be selective and strategic" in determining how to defend a case. United States v. Mason, 774 F.3d 824, 828, 830 (4th Cir. 2014) (citations omitted).

The second prong of Strickland requires a petitioner to "affirmatively prove prejudice," which requires a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 693-94. "A reasonable

probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. If a petitioner fails to prove either prong of the Strickland test such failure is fatal to his § 2255 claim. Moore v. Hardee, 723 F.3d 488, 500 (4th Cir. 2013).

## III. DISCUSSION

### A. Ineffective Assistance at the Trial Level

#### 1. Failure to Investigate

The first subpart of Petitioner's first claim (ineffective assistance at the trial level) alleges that trial counsel was ineffective for "fail[ing] to investigate meritorious legal arguments." ECF No. 58, at 2. Such vague assertion does not include further detail identifying the allegedly forgone legal arguments, and it is therefore denied without further comment. United States v. Dyess, 730 F.3d 354, 359 (4th Cir. 2013) ("Vague and conclusory allegations contained in a § 2255 petition" are insufficient to carry a petitioner's burden under Strickland, and such allegations may therefore "be disposed of without further investigation by the District Court.") (quotation marks and citation omitted).

#### 2. Failure to engage in "Adversarial Testing"

The next subpart of Petitioner's first claim contends that "defense counsel fail[ed] to subject the prosecution's case to meaningful adversarial process." ECF No. 58, at 2. To the extent such argument attacks counsel's handling of the cross-examination

of the testifying officer, a review of the suppression hearing transcript clearly demonstrates that counsel's performance fell "within the wide range of reasonable professional assistance." United States v. Morris, 917 F.3d 818, 823 (4th Cir. 2019) (explaining that a reviewing court "start[s] with 'a strong presumption that counsel's representation was within the wide range of reasonable professional assistance.'" (quoting Harrington v. Richter, 562 U.S. 86, 104 (2011))). To the extent Petitioner challenges defense counsel's strategic decision to focus his suppression argument on the validity of the initial traffic stop, rather than the validity of the post-stop inventory search, the Court reaches the same conclusion for the reasons outlined below.

The face of the record reveals that defense counsel's decision not to challenge the lawfulness of the inventory search was an intentional strategic decision as defense counsel objected in open court in order to cut off the testifying officer before he discussed the full chronology of the traffic stop. Tr. 46. The Government responded to such objection by noting that it intended to elicit testimony in support of the validity of the subsequent inventory search, but agreed that the additional testimony was unnecessary if defense counsel was not pursuing such distinct legal challenge. Id. A review of the record reveals that there were valid strategic reasons for defense counsel to take such approach, including: (1) the "well-established exception to the warrant

requirement" authorizing inventory searches of vehicles in "lawful custody" of the police following a "reasonable" decision to impound the vehicle, United States v. Brown, 787 F.2d 929, 931-32 (4th Cir. 1986); (2) the undisputed evidence demonstrating that Petitioner was driving after his license was suspended in conjunction with prior DUI offenses, ECF No. 33, at 1; (3) the Virginia statute mandating that Petitioner's car be impounded if he was arrested for driving under DUI suspension, Va. Code § 46.2-301.1(A); (4) the written Virginia Beach Police procedures for conducting inventory searches, Va. Beach Police Dep't General Order 12.12, available at https://www.vbgov.com/government/departments/police/Documents/12.12%20Abandoned%20Vehicles%20and%20Towing_Redacted.pdf;[1] (5) the written police reports documenting the facially lawful manner in which the inventory search was conducted in this case, ECF Nos. 71-3, 71-4; and (6) the fact that challenging such contemporaneous reports would have elicited live testimony about Petitioner's aggressive reaction and resistance when police attempted to arrest him.[2] As expressly recognized by

---

[1] The version of General Order 12.12 that is currently available online was updated in November of 2017. Petitioner's exhibit to his first reply brief includes the same language as the current online version. ECF No. 71-9.

[2] Petitioner's efforts to resist arrest resulted in the officers nearly having to use their tasers to detain him, an unfavorable fact for Petitioner, particularly because he was not under the influence of alcohol at the time. Cf. ECF No. 24, at 3. By electing to cut off the officer's testimony, defense counsel avoided placing such evidence before the Court during the suppression hearing, and Petitioner's subsequent sworn "Statement of Facts" entered in conjunction with his guilty plea, further reflects defense counsel's efforts to avoid presenting such facts to the Court. See ECF No.

the Fourth Circuit, defense counsel "can be selective and strategic without risking an ineffective assistance of counsel claim," because a failure to set priorities and focus on what are perceived as the most meritorious claims leads to a "scattershot" approach that "can be positively detrimental to a client's chances." Mason, 774 F.3d at 830; see United States v. Galloway, No. 2:10cr96, 2014 WL 584047, at *6 (E.D. Va. Feb. 12, 2014) ("[T]he difficulty in overcoming the general presumption that defense counsel provided effective assistance is even greater where counsel's actions required a strategic 'assessment and balancing of perceived benefits against perceived risks'—such strategic decisions must be afforded 'enormous deference.'" (quoting United States v. Terry, 366 F.3d 312, 317 (4th Cir. 2004))).[3]

In challenging counsel's performance on this issue, Petitioner's initial § 2255 filings focus primarily on the fact that Petitioner's aunt purportedly arrived at the scene of his

_____

33, at 2 (stipulating only that Petitioner was "placed under arrest" based on his suspended license). Such facts did, however, ultimately come out at sentencing, ECF No. 47 ¶ 11, and the fact that Petitioner's aggressive conduct was expressly referenced by the Court when discussing the relevant sentencing factors further illustrates the wisdom behind defense counsel's strategic decision to avoid live testimony further developing such unfavorable facts.

[3] In addition to avoiding live testimony detailing Petitioner's aggressive behavior, defense counsel's "selective" decision to press only two claims of corrupt police conduct (false reason for the traffic stop, false statements in search warrant affidavits), rather than three claims of corrupt conduct (false chronology of a search that the law otherwise permits), is reasonably viewed as more likely to garner traction with the Court as it stood a lesser chance of being dismissed as a broad conspiracy theory.

arrest and asked to take possession of the vehicle Petitioner was driving. Petitioner's filings repeatedly suggest that police were obligated to allow her to do so, that there was no reasonable basis for declining to transfer possession of the car (she was licensed, and the car was operational), and that the failure to transfer possession demonstrates that the police were using the inventory search as a pretext to search for contraband. ECF No. 58, at 3-4. Such arguments, however, overlook the fact that the officers had a statutory right, if not a duty, to impound the vehicle and hold it for 30 days after the decision was made to arrest Petitioner for driving on a suspended license after a DUI offense. Va. Code § 46.2-301.1(A). Moreover, even after accepting Petitioner's facts as true, the same Virginia statute, as well as common sense, further illustrate the reasonableness of the officers' decision not to turn the car over to Petitioner's aunt, who was not even a passenger in the car. Notably, the Virginia statute has an express procedure for the "owner or co-owner" to secure release of an impounded vehicle, but makes no reference to a "relative" of an owner taking possession, as questions may arise as to whether the claimed relative is in fact related to the owner and/or whether the owner would authorize the relative to take possession of the vehicle. Va. Code § 46.2-301.1(C);[4] cf. United

_____

[4] The owner of the vehicle may also be guilty of a crime as the Virginia statute further provides that an owner who provides a vehicle to a person

10

States v. Beal, 430 F.3d 950, 954 (8th Cir. 2005) (noting that it was appropriate for the police to impound a vehicle and "avoid[] any potential ownership dispute" as to both the vehicle itself and its contents in a case where "the registered owner had arrived at the scene of the stop and was ready and willing to take the vehicle") (emphasis added). Accordingly, this Court easily concludes that the arrival of Petitioner's aunt has no bearing on the legality/reasonableness of the officers' decision to impound the car or the officers' right/duty to perform an inventory search. Petitioner therefore fails to demonstrate that counsel was constitutionally deficient for failing to litigate this issue, which was not "clearly stronger" than the two challenges that were presented by counsel.[5] Mason, 774 F.3d at 829.

Alternatively, even if this Court assumes that counsel was constitutionally deficient for failing to challenge the inventory

_____

known to have had their license suspended for a listed reason may be guilty of a "Class 1 misdemeanor." Va. Code § 46.2-301.1(E).

[5] Petitioner's own affidavit reflecting the version of events he told defense counsel at the time of the suppression hearing confirms that Petitioner was arrested after a record check revealed that his license was suspended for DUI offenses and that the police refused to release the car to Petitioner's aunt, purportedly stating that they had to search it. ECF No. 58-1. Petitioner's aunt's affidavit provides a similar version of events, stating that the officers told her that Petitioner was being arrested for a suspended license and the officers had to tow the car (later asserting that the police never towed the car). ECF No. 60-1. Petitioner's aunt's affidavit does not squarely address whether, as asserted by the arresting officers, the police began an inventory search but quickly stopped such inventory after locating contraband. Cf. United States v. Patiutka, 804 F.3d 684, 690 (4th Cir. 2015) ("Police officers do not need a warrant to search an automobile if they have probable cause to believe it contains evidence of criminal activity.").

search, Petitioner fails to demonstrate a reasonable likelihood that a timely challenge would have succeeded. First, as to the decision to impound the vehicle, after Petitioner was stopped, officers determined that his license was suspended due to prior DUI convictions. As indicated above, Virginia statute provides that if a driver is arrested in such circumstances, the vehicle "shall be impounded or immobilized . . . for a period of 30 days." Va. Code § 46.2-301.1(A) (emphasis added).

Second, as to the on-scene inventory search, the Court similarly finds that Petitioner fails to demonstrate a reasonable likelihood that a timely challenge would have succeeded. As cited by Petitioner, written Virginia Beach Police procedures provide that "[i]n the event that a vehicle is seized or towed for any reason (other than as evidence in a crime) by police personnel, the officer . . . shall compile an inventory of the contents of the vehicle without delay," and the search shall "include items found in the glove box, trunk, and all storage areas." ECF No. 71-9, Va. Beach Police Dep't General Order 12.12 (emphasis added). Petitioner does not challenge the validity of such policy, but instead seeks to demonstrate that the police searched his car in bad faith based in part on his aunt's sworn assertions that police never called a tow truck and that the seized vehicle was searched, and then driven away, by "plain-clothes" officers that arrived on the scene after the arresting officers. ECF No. 60-1.

Petitioner's hindsight challenge, however, fails to establish Strickland prejudice because: (1) Petitioner's affiant asserts facts that, on their face, appear outside her personal knowledge (whether one of multiple officers on the scene called a tow truck); and (2) even assuming that a tow truck was not called (rendering one of the written police accounts inaccurate), and further assuming that plain-clothes officers drove the seized vehicle to the police station (an act appearing to conflict with written police procedures), such facts have little bearing on whether <u>the arresting officers</u>, at the time of the initial search, had a valid and good faith basis to perform an inventory search. Stated another way, the precise timeline of when a tow truck was called, if at all, and/or the manner that "plain clothes" detectives handled the vehicle afterward, appears largely irrelevant to the documented fact that the arresting officers <u>were lawfully impounding the vehicle</u> and written police procedures required the officers <u>to inventory all storage areas of the vehicle</u> regardless of whether a tow truck was already en route. <u>Cf.</u> ECF No. 71-3 (officer statement indicating that the inventory began after a tow truck was called); ECF No. 71-4 (statement from second officer that does not reference a tow truck, but instead indicates that an inventory search began after Petitioner was arrested <u>because the vehicle was to be held for 30 days</u>).

Any suggestion that Petitioner was not going to be arrested and/or that the vehicle was not going to be impounded until after a pretextual search discovered evidence of narcotics trafficking is belied by the fact that: (1) Petitioner told officers that he was aware that his license was suspended in connection with prior DUIs, ECF No. 33, at 1, and as cited by Petitioner, Virginia Beach Police procedures provide that "Officers will normally arrest an individual reasonably believed to be driving in knowing violation of an order of revocation or suspension," ECF No. 71-9, Va. Beach Police Dep't General Order 12.01 (emphasis added), available at https://www.vbgov.com/government/departments/police/Documents/12 .01%20Traffic%20Law%20Enforcement.pdf; (2) Petitioner's own affidavit indicates that he was placed under arrest before any search occurred and that he heard the officers tell his aunt that his license was suspended, ECF No. 58-1; and (3) Petitioner's aunt's affidavit states that she was told by officers that Petitioner was going to jail and that the car would be towed (facts that support the lawfulness of an inventory search even if a tow truck had not yet been called, or had been called but was later canceled). ECF No. 60-1. Accordingly, the police "misconduct" now alleged by Petitioner, occurring after the right to inventory the vehicle had attached, appears legally immaterial, as illustrated by the fact that Petitioner's aunt swears that she was told prior to the arrival and/or search by plain clothes officers

14

that the car had to be towed.  Id.; compare United States v. Matthews, 591 F.3d 230, 235 n.7 (4th Cir. 2009) ("[A]n officer's suspicion that contraband may be present [in the vehicle] does not invalidate an otherwise lawful inventory search.") (second alteration in original) (citation omitted), and United States v. Marshall, 986 F.2d 1171, 1175–76 (8th Cir. 1993) ("The police are not precluded from conducting inventory searches when they lawfully impound the vehicle of an individual that they also happen to suspect is involved in illegal activity."), with United States v. Banks, 482 F.3d 733, 739 (4th Cir. 2007) ("[A]n inventory search conducted pursuant to standardized procedures is valid so long as the purpose of the inventory is . . . not to gather incriminating evidence . . . .") (internal quotation marks and citation omitted).[6]

When considering both defense counsel's strategic decision not to challenge the inventory search, and the Strickland prejudice inquiry, this Court must look through a hindsight lens that also considers the applicability, or apparent applicability, of the "inevitable-discovery doctrine." See United States v. Bullette, 854 F.3d 261, 266 (4th Cir. 2017) (finding that there was

---

[6] The inventory search in Banks was upheld notwithstanding the defendant's identification of "six discrepancies" between the actual search and a written inventory policy, with the court finding that the unique facts revealed that such discrepancies did not amount to a constitutional violation and did not establish a pretextual motivation behind the inventory search. Banks, 482 F.3d 733, 739-41.

sufficient evidence for "the district court to find that the DEA had a standard inventory procedure pertaining to all impounded vehicles and would have inevitably discovered the challenged evidence by conducting an inventory search according to routine and standard DEA procedures"). Notably, even if the arresting officers and/or plain clothes officers deviated from the standard inventory procedure as now alleged (failure to properly fill out forms, failure to utilize a tow service, search conducted by detectives rather than arresting officers), defense counsel had to evaluate the small chance of successfully challenging the search in light of the "inevitable-discovery" doctrine because the facially lawful Virginia Beach Police inventory policy requires an inventory of "all [vehicle] storage areas," which clearly includes the console, after lawful seizure for a 30-day impoundment period. See id. at 267 ("The government meets its burden and this court can affirm on inevitable-discovery grounds if the district court can assess the inevitability and reasonableness of a hypothetical inventory search from testimony provided by a law-enforcement official."); United States v. Engle, 677 F. Supp. 2d 879, 888 (E.D. Va. 2009) (alternatively holding that even if it was unlawful for a detective to intervene in an inventory search to look for contraband, the evidence discovered during such unlawful search remained admissible pursuant to the inevitable discovery doctrine); United States v. Avagyan, 164 F. Supp. 3d 864, 892 (E.D.

16

Va. 2016) (finding that "[e]ven if the automobile exception did not apply," the evidence seized during the unlawful search of the vehicle "would be non-excludable through the joint operation of the inevitable discovery doctrine and the inventory exception to the warrant requirement").[7]

In sum, because applicable law clearly provided a valid basis for Petitioner's arrest, the seizure of his vehicle, and a subsequent inventory search, a suppression motion challenging the search itself was unlikely to succeed, especially when the inevitable discovery doctrine is considered. Defense counsel's decision to focus his challenge on the legality of the stop itself, rather than the stop and subsequent inventory search, falls within the wide range of reasonably professional assistance, particularly because: (1) counsel had circumstantial evidence in support of his assertion that the stop was pretextual (the existence of an ongoing police investigation targeting Petitioner and the absence of alcohol in his system); and (2) counsel's approach shielded the

---

[7] To the extent that Petitioner suggests that the inventory search was merely a ruse for locating contraband, this Court previously heard, and accepted as credible, the testimony of an arresting officer indicating that he did not know Petitioner, had not participated in any investigation of Petitioner prior to the night of the arrest, did not know who was driving the car when he pulled it over, and that the car was not registered to Petitioner. Tr. 43-44. All of these facts undercut Petitioner's hindsight effort to demonstrate a "bad faith" inventory search conducted to further an ongoing drug investigation into Petitioner. Moreover, considering the facts from counsel's perspective at the time, the absence of a properly completed "inventory form" needs to be considered in conjunction with the officers' contemporaneous written reports indicating that they halted the inventory search as soon as contraband was located and turned over possession of the vehicle to detectives. ECF Nos. 71-3, 71-4.

17

Court from hearing live testimony of Petitioner's aggressive response to officers' efforts to arrest him. Not only was counsel's strategic decision constitutionally competent, but Petitioner's post-hoc efforts to challenge the inventory search are insufficient to undermine this Court's confidence in the outcome of suppression proceedings even after fully crediting the sworn facts presented by Petitioner and his aunt.[8] Petitioner therefore fails to satisfy either prong of Strickland.

### 3. Advice Regarding Testifying

The next subpart of Petitioner's first claim contends that defense counsel provided "gross misadvice when he advised Petitioner not to testify" at the suppression hearing. ECF No. 58, at 5. In hindsight, and after losing the suppression motion, Petitioner argues that counsel's advice was constitutionally deficient because it left the officer's testimony uncontradicted. Id. at 5-6. First, the record clearly reveals that defense counsel had a reasoned and well-justified basis for advising Petitioner not to testify, with counsel's sworn affidavit explaining:

> I specifically advised Mr. Johns that if he testified, he would be subject to cross-examination by the prosecutor and the Court could also ask questions. I told Mr. Johns my opinion about the chances of winning the motion without his testimony, fully discussed my opinion and experience in cases where a defendant with

---

[8] Petitioner's suggestion that defense counsel should have submitted an affidavit from Petitioner is necessarily intertwined with Petitioner's separate argument regarding counsel's advice about testifying at the suppression hearing because the Court would not have credited the contents of an affidavit in the absence of Petitioner's live testimony in open court.

a criminal record testifies and states that a police
officer is not being truthful, and fully explained the
potential consequences under the United States
Sentencing Guidelines if the Court determined that he
testified falsely under oath in a pre-trial hearing. It
was Mr. Johns' decision not to testify after being fully
informed of his rights and receiving my best legal advice
and opinion.

ECF No. 65-3 (emphasis added).

Petitioner's post-hoc accusations that counsel's advice was
unsound do not require an evidentiary hearing because Petitioner's
conclusory statements that counsel did not correctly advise him
are not supported by the record. To the contrary, Petitioner has
a long criminal history and his intended testimony would in fact
have involved asserting under oath that at least one, and possibly
two or more, police officers were committing perjury. Moreover,
testifying in such manner unquestionably ran the risk of increasing
Petitioner's advisory Guideline range for obstruction, which in
this case, would have increased Petitioner's Guideline range by
approximately 18 months. While it is true that it is within the
range of possibility, particularly when considered in hindsight,
that Petitioner's testimony could have improved his chances at the
suppression hearing, on this record, Petitioner fails to
demonstrate that counsel committed constitutional error by
recommending the contrary approach, or that there is a "reasonable
probability" of a different outcome had he elected to testify.
See Umar v. United States, 161 F. Supp. 3d 366, 375 (E.D. Va. 2015)

("As it is all too easy to challenge an act, omission, or strategy, once it has proven unsuccessful, 'every effort [must] be made to eliminate the distorting effects of hindsight . . . and to evaluate the conduct from counsel's perspective at the time.'" (quoting Strickland, 466 U.S. at 689)).[9]

In addition to his challenge to the wisdom behind counsel's advice that Petitioner should elect not to testify, Petitioner's § 2255 brief, supported by a sworn affidavit, also argues that counsel did not adequately explain to Petitioner why he should not testify. ECF No. 58, at 6; ECF No. 58-1. Petitioner never asserts that counsel forced him not to testify, or improperly made the decision for him, but rather, asserts that counsel gave no explanation for his advice, indicating only that "it would not be a good idea" if Petitioner testified. ECF No. 58-1, at 1. Petitioner discussed this "limited" advice with his family and they told him to listen to his lawyer. Id.

Accepting Petitioner's sworn factual allegation as true is conceivably enough to establish constitutionally deficient

---

[9] Even without Petitioner's testimony at the suppression hearing, defense counsel strived to create an inference that the arresting officer's testimony should not be credited based on Virginia Beach detectives' investigative desire to arrest Petitioner, the arresting officers' suspect claims of erratic driving even though Petitioner was sober, and (on the Franks issue) the police's failure to document in their records surveillance of Petitioner that was reported to magistrates in two separate sworn affidavits. Such efforts were possible without Petitioner's testimony, further underscoring the reasoned strategy behind counsel's approach.

performance in this one regard;[10] however, Petitioner nevertheless fails to demonstrate Strickland prejudice because the prudence of counsel's recommendation is apparent from the record, and if Petitioner elected not to testify based on counsel's limited explanation, the Court can envision no different result had Petitioner been more fully advised of the multiple valid reasons why he should not testify. The same can be said of the outcome of the suppression hearing, as there is not a reasonable probability that evidence would have been suppressed had counsel presented a more robust explanation of the risks of testifying. Accordingly, even if the Court presumes constitutional error based on incomplete advice, such error falls short of undermining confidence in the outcome.

### 4. Franks Hearing Argument

Petitioner's initial § 2255 motion and accompanying brief challenge defense counsel's alleged mishandling of the suppression

---

[10] This Court is not permitted to make credibility findings based on conflicting affidavits, so it accepts as true Petitioner's version of events, and assumes, without deciding, that counsel was deficient in this one regard. However, a contrary argument can surely be made, that is, that Petitioner's allegations fail to demonstrate constitutionally deficient performance absent an allegation that Petitioner lacked an opportunity to ask his lawyer follow-up questions, or that counsel otherwise refused to further discuss this issue with Petitioner. Cf. United States v. Teague, 953 F.2d 1525, 1535 (11th Cir. 1992) (affirming a finding that counsel did not perform deficiently in a case where "[t]he Defendant was advised of his right to testify, was advised that he should not exercise that right, and did not protest"); see also Starkweather v. Smith, 574 F.3d 399, 404 (7th Cir. 2009) (concluding that "clearly established" federal law does not provide that counsel has a duty to explain the reason for the strategic advice given to his client regarding testifying even though ABA standards and modern practice certainly suggests that a lawyer should do so).

hearing only with respect to the traffic stop and subsequent inventory search. It is not until Petitioner's first and second reply brief, filed long after the § 2255(f)(1) limitations period had expired, that Petitioner advanced an ineffective assistance claim based on trial counsel's handling of the "Franks hearing" portion of the suppression hearing, which involved the post-arrest search of two residences. As such entirely distinct ineffective assistance claim does not "relate back" to the initial § 2255 filings, it is subject to dismissal as an untimely effort to advance a factually distinct § 2255 claim. See United States v. Pittman, 209 F.3d 314, 317-18 (4th Cir. 2000) (discussing "relation back" principles in a § 2255 case and rejecting a "broad view" that would permit conceptually distinct ineffective assistance claims to relate back as long they arose out of the same trial or proceeding as the original claims). Moreover, such claim was improperly raised for the first time in a reply brief without an associated request seeking leave to amend Petitioner's § 2255 motion. See R. Gov. § 2255 Proc. for U.S. Dist. Cts. 2(b) (indicating that a § 2255 motion "must . . . specify all the grounds for relief available to the moving party") (emphasis added). Petitioner's improperly raised reply-brief claim is DISMISSED as untimely.[11]

---

[11] Typically, a pro se petitioner is afforded an opportunity to respond to an apparent timeliness issue prior to dismissal on procedural grounds. However, here, not only did Petitioner submit his § 2255 motion on a pre-

Alternatively, assuming that such claim is procedurally proper, it is nevertheless denied on the merits. Petitioner accurately asserts that a _Franks_ hearing may be predicated on "a substantial preliminary showing" that: (1) an otherwise facially valid affidavit includes a knowingly false statement that "is necessary to the finding of probable cause," _Franks v. Delaware_, 438 U.S. 154, 155-56 (1978)); or (2) an affiant made an intentional or reckless _omission_ of a material fact, which if included, "would defeat a probable cause showing," _United States v. Tate_, 524 F.3d 449, 455 (4th Cir. 2008). However, here, having reviewed Petitioner's hindsight arguments suggesting that defense counsel took the wrong tact while challenging the two search warrant affidavits (associated with homes in Virginia Beach and Hampton, Virginia), the Court easily finds that Petitioner fails to demonstrate that counsel's performance was constitutionally deficient or that Petitioner was prejudiced.

---

printed § 2255 form that both required him to "state every ground" for relief and expressly prompted him to address the timeliness of his claims, but he submitted such form within days of the expiration of the one-year § 2255(f)(1) limitations period and did not advance any § 2255 challenge associated with the search warrants <u>even though such issue was squarely litigated at the suppression hearing</u>. Petitioner's reply briefs fail to demonstrate that any of the "alternative" statutory triggers for the one-year limitation period apply to his tardy claim, or that equitable tolling is applicable, and a review of the record confirms the same. 28 U.S.C. § 2255(f). Accordingly, it "is indisputably clear from the materials presented" that Petitioner is time-barred from advancing a conceptually distinct ineffective assistance claim more than six months after the expiration of the limitations period when he was intimately familiar with such issue at the time he filed his initial § 2255 motion. <u>Hill v. Braxton</u>, 277 F.3d 701, 707 (4th Cir. 2002).

Petitioner's reply briefs argue that defense counsel should have provided more evidence demonstrating that investigating officers knew, but failed to include in the first-in-time Virginia Beach search warrant affidavit, that: (1) the Virginia Beach home that Petitioner self-reported to police as his residence was actually his parents' home; and (2) Petitioner lived, or was suspected to live, at a different home in Hampton. Although Petitioner advances a more robust argument on this issue than his counsel presented at the suppression hearing, consistent with this Court's prior finding that the omitted facts highlighted by counsel at the suppression hearing would not alter the probable cause determination for the Virginia Beach residence, the Court makes the same finding with respect to the additional omitted facts highlighted by Petitioner in his reply briefs. As further illustrated below, the Court therefore finds neither constitutionally deficient performance nor resulting prejudice.[12]

Petitioner's failure to satisfy either prong of Strickland is underscored by the fact that Petitioner's hindsight § 2255 Franks argument is directed to factual omissions from the Virginia Beach

---

[12] At the suppression hearing, defense counsel focused both on the alleged material omissions in the Virginia Beach affidavit regarding the existence of a second residence in Hampton, and the fact that both the Virginia Beach affidavit and the subsequent Hampton affidavit referenced police conducting surveillance of Petitioner at the respective residence to be searched, yet there was curiously no record of surveillance in any police file. In his § 2255 reply brief, Petitioner seeks to advance a more robust attack on only the first argument, yet as discussed herein, strategically, the first argument was of far less import.

affidavit; however, as explained by defense counsel at the suppression hearing, no incriminating evidence was discovered at the Virginia Beach residence, Tr. 18, a fact that drove defense counsel to focus his attacks on allegedly fabricated material facts contained in the Hampton affidavit (both drugs and a firearm were recovered from Petitioner's Hampton home). Because counsel's goal was to suppress evidence from the Hampton search, he made the informed decision to focus his challenge on the alleged material misstatement in the Hampton affidavit regarding allegedly fabricated police surveillance, and defense counsel aptly argued that there was a similar material misstatement in the Virginia Beach affidavit. Additionally, defense counsel sought to use the purported material omissions from the Virginia Beach affidavit in an effort to color the Court's interpretation of the veracity of the information in the Hampton affidavit. While the material omission claim may be facially easier to argue, Petitioner's singular focus on such argument in his § 2255 filings misses the mark as to both prongs of Strickland because the outcome of the Virginia Beach search was not consequential to Petitioner's prosecution.[13] Moreover, it would have been virtually impossible for the defense to establish that details about the Hampton

---

[13] When Petitioner was arrested, there was paperwork in the vehicle tying him to the Hampton address. While additional evidence tying Petitioner to such address was discovered during the first-in-time search of the Virginia Beach residence, such additional evidence was not material to the probable cause determination for the Hampton search warrant.

residence known by federal investigators were intentionally left out of the Virginia Beach affidavit <u>for the purpose</u> of misleading the magistrate when the same investigators had evidence indicating that <u>Petitioner maintained a room</u> at his parents' Virginia Beach residence and was alleged to have used such location to count drug proceeds. ECF No. 71-8, at 2.

In conclusion: (1) as to the Virginia Beach residence, the additional "omitted" facts now highlighted by Petitioner would not have changed this Court's ruling denying a <u>Franks</u> hearing because record checks, Petitioner's license, and Petitioner's self-report to police on the night of his arrest all indicated that he lived, at least in part, at the Virginia Beach home owned by his parents; and (2) as to the Hampton residence, the search was supported by information located in the car Petitioner was driving on the night of his arrest, and probable cause existed with, or without, the additional information found at the Virginia Beach residence. Petitioner's newly advanced arguments therefore fail to undermine this Court's confidence in its prior ruling denying a <u>Franks</u> hearing. For the reasons stated above, Petitioner fails to satisfy either prong of the <u>Strickland</u> test.

### 5. Additional Reply brief Arguments

This Court's rulings granting Petitioner's briefing motions authorized the filing of Petitioner's (otherwise late) reply brief, which was permitted to exceed the page limit established by

Local Rule, and further allowed a later-in-time supplement to such reply. This Court has carefully reviewed <u>all of the arguments</u> contained within such briefs addressing Petitioner's ineffective assistance claims, and finds that none of the supplemental arguments (whether timely or untimely) warrant § 2255 relief in this case. Accordingly, any additional arguments not squarely discussed herein are denied for failing to satisfy the <u>Strickland</u> test.

### B. Ineffective Assistance at the Appellate Level

Petitioner's second ground for relief argues that defense counsel, who also served as appellate counsel, was ineffective on appeal. Petitioner's memorandum in support of his § 2255 motion does not advance a clear and distinct challenge to appellate counsel's performance, but rather, reasserts that counsel failed to "adversarially test the government's case" on appeal, further "reassert[ing] all the arguments and caselaw presented in Ground 1." ECF No. 58, at 7. For the reasons stated herein addressing Ground One, the Court finds that Petitioner fails to advance a meritorious claim for § 2255 relief based on counsel's performance on appeal. In reaching such conclusion, this Court has reviewed defense counsel's appellate brief and found that the arguments on appeal fall well within the standard for reasonable professional assistance.

## IV. CONCLUSION

For the forgoing reasons, Petitioner's unopposed motions seeking leave to file supplemental briefs are **GRANTED**, ECF Nos. 69, 70, 73, and Petitioner's § 2255 motion, considered in conjunction with all relevant briefs, is **DENIED** in its entirety.[14] ECF No. 57.

Finding that the procedural basis for dismissal of Petitioner's untimely Franks hearing claim is not debatable, and further finding that Petitioner has not made a "substantial showing of the denial of a constitutional right" as to any of his ineffective assistance claims, a certificate of appealability is **DENIED**. 28 U.S.C. § 2253(c)(2); see R. Gov. § 2255 Proc. for U.S. Dist. Cts. 11(a); Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003); Slack v. McDaniel, 529 U.S. 473, 483-85 (2000).

Petitioner is **ADVISED** that because a certificate of appealability is denied by this Court, he may seek a certificate from the United States Court of Appeals for the Fourth Circuit. R. Gov. § 2255 Proceedings for U.S. Dist. Cts. 11(a). If Petitioner intends to seek a certificate of appealability from the Fourth Circuit, he must do so **within sixty (60) days** from the date of this Order. Petitioner may seek such a certificate by filing a written notice of appeal with the Clerk of the United States

---

[14] As noted above, Petitioner's reply-brief Franks challenge is dismissed as untimely, and is alternatively denied on the merits.

District Court, United States Courthouse, 600 Granby Street, Norfolk, Virginia 23510.

The Clerk is **DIRECTED** to forward a copy of this Opinion and Order to Petitioner, to Petitioner's former counsel, and to the United States Attorney's Office in Norfolk, Virginia.

**IT IS SO ORDERED.**


                                        /s/ _____

                                        Mark S. Davis
                          CHIEF UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
May 10 , 2019